# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

| | | |
|---|---|---|
| RITA GAYLE MANIRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:11-cv-00080 |
| v. | ) | Judge Wiseman / Knowles |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff

was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended.

The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record.

Docket No. 12.  Defendant has filed a Response, arguing that the decision of the Commissioner

was supported by substantial evidence and should be affirmed.  Docket No. 13. Plaintiff has filed

a Reply.[1] Docket No. 14.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for

Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

---

[1] The undersigned notes that Plaintiff did not seek or obtain leave of court to file this
Reply.  Because Plaintiff's Reply filing was not contested, however, the undersigned will
nevertheless consider it.

1

be AFFIRMED.

# I.  INTRODUCTION

Plaintiff filed her applications for DIB and SSI on February 21, 2006, with a protective filing date of January 25, 2006, alleging that she had been disabled since July 28, 2004, due to "mental conditions[,] stiffness in body[,] old injuries[, and] tumors."  Docket No. 10, Attachment ("TR"), TR 125-29, 130-32, 142-53.  Plaintiff's applications were denied both initially (TR 79-80, 81-82) and upon reconsideration (TR 85-86, 83-84).  Plaintiff subsequently requested (TR 99) and received (TR 40-68) a hearing.  Plaintiff's hearing was conducted on July 24, 2008, by Administrative Law Judge ("ALJ") John R. Daughtry. *Id.*  Plaintiff and vocational expert ("VE"), Rebecca Williams appeared and testified. *Id.*

On August 20, 2008, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 28-39.  Specifically, the ALJ made the following findings of fact:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2005.

2. The claimant has not engaged in substantial gainful activity since July 28, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: bipolar disorder/major depression, borderline personality disorder, and chronic pain syndrome (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

2

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a medium range of work including the following: occasional lifting up to 50 pounds, frequent lifting up to 25 pounds, standing or walking up to 6 hours in an 8-hour workday, and sitting for up to 6 hours in an 8-hour workday. Additionally, the claimant can perform simple, repetitive, non-detailed tasks in a low stress work environment with minimal supervision and at least occasional contact with the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 15, 1954, and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 28, 2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 32-38.

On October 14, 2008, Plaintiff timely filed a request for review of the hearing decision.

3

TR 25.  On December 18, 2009, the Appeals Council granted review. TR 112-15. On January 19,

2010, the Appeals Council issued a decision partially favorable to Plaintiff, concluding that, as

of April 20, 2007, Plaintiff was entitled to benefits under title XVI of the Act because her

depression had worsened, but that she was not entitled to title II benefits because she did not

become disabled prior to the expiration of her insured status. TR 10-16.

On April 19, 2010, the Appeals Council sent notice that it was reopening and revising its

decision regarding DIB.[2] TR 118-21. On July 22, 2011, the Appeals Council determined that

Plaintiff did not meet the insured status requirement of the Act to be entitled to a period of

disability and disability insurance benefits beginning April 20, 2007, and adopted the ALJ's

findings that Plaintiff was not disabled prior to April 20, 2007.  TR 1-6.  This became the final

decision of the Commissioner.  *Id.*  This civil action was thereafter timely filed, and the Court

has jurisdiction.  42 U.S.C. §§ 405(g) and 1383(c)(3).  If the Commissioner's findings are

supported by substantial evidence, based upon the record as a whole, then these findings are

conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and

testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the

extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

---

[2] The Appeals Council's notice stated that it was not changing its decision regarding SSI.
TR 118.

4

## A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229; 59 S.Ct. 206, 216; 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980) (citing *Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence:

Case 1:11-cv-00080   Document 15   Filed 09/28/12   Page 5 of 24 PageID #: 759

(1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience.  *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

---

[3] The Listing of Impairments is found at 20 CFR, Pt. 404, Subpt. P, App. 1.

6

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.  Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and

7

nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that**,** in finding that Plaintiff was not entitled to DIB, the ALJ erred in finding that Plaintiff was not disabled prior to the March 31, 2005 expiration of her insured status.[4]  Docket No. 12-1.  Specifically, Plaintiff argues that the ALJ:  1) failed to accord proper weight to the opinions of her treating physicians; 2) did not properly assess her credibility; and 3) erred in concluding that drugs and alcohol were material to a finding of disability.  *Id.* Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  *Mowery v. Heckler*, 771 F.2d 966, 973 (6ᵗʰ Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Secretary*, 17 F.3d 171,

---

[4] With regard to her claim for SSI, Plaintiff notes that because the Appeals Council awarded her SSI, the ALJ's analysis regarding her SSI claim is not at issue in this civil action.

176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Weight Accorded to Opinions of Plaintiff's Treating Physicians

Plaintiff maintains that the ALJ failed to properly consider and evaluate the opinions of her treating physicians. Docket No. 12-1 at 6-10. In particular, Plaintiff argues that the ALJ did not properly consider the medical source statement (MSS) completed by treating physician, Dr. Melvin G. Lewis. *Id.* Plaintiff asserts that the ALJ failed to give "good reasons" for discounting Dr. Lewis's opinion, especially given the length of time for which he treated Plaintiff. *Id.* Additionally, Plaintiff argues that Dr. Poling's assessment and the Centerstone Mental Health records (both treating sources) were "similar in nature" to the opinions Dr. Lewis expressed in his MSS, and therefore, the ALJ should have given these medical opinions controlling weight as well.[5] *Id.* Plaintiff reiterates her arguments in her Reply. Docket No. 14.

Defendant responds that contrary to Plaintiff's assertions, the ALJ properly considered all the evidence, and adequately discussed and explained his reasons for not according Dr. Lewis's opinion controlling weight. Docket No. 13 at 13-18. Defendant also responds that the ALJ

---

[5] Specifically, Plaintiff argues:

> . . . The ALJ merely stated that Dr. Lewis' opinion, along with the assessments of Dr. Poling and Centerstone Mental Health (the claimant's treating sources) were inconsistent with the Consultative Examiners' assessments; and were not supported by the medical evidence of record.

> . . .The ALJ erred by failing to give the required "good reasons" for not giving controlling weight to the MSS completed by Dr. Lewis, or the assessments by Dr. Poling and Centerstone Mental Health. The assessments by Dr. Poling and Centerstone Mental Health were similar in nature, and support Dr. Lewis' findings/Medical opinion.

Docket No. 12-1 at 9.

conducted a detailed evaluation of the medical and testimonial evidence, and contends that the

ALJ's decision was consistent with the medical record. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations

states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion . . . .
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

10

> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>
> . . .

20 CFR 416.927(d) (emphasis added). *See also* 20 CFR 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR 404.1502.

In determining Plaintiff's RFC, the ALJ specifically addressed Dr. Lewis's medical source statement and the reasons he accorded it little weight. The ALJ noted:

> Considering opinion evidence, [o]n July 6, 2006,[6] Dr. Lewis, the claimant's primary care physician, opined the claimant cannot perform activities of daily living independently and is precluded from interacting with supervisors or co-workers. It is noted that the claimant lives alone and takes care of her basis [*sic*] necessities. Dr. Lewis also opined that the claimant has no ability to interact with others or engage in social functioning, although the claimant stated she went out daily to eat and testified she had no problems with people. Dr. Lewis opined she has no abilities in [the] following areas: concentration, persistence, or pace, adapting to stress, following work rules, dealing with the public, maintaining personal appearance, dealing with work stress, or demonstrating reliability; however, the claimant has always been adequately groomed, and has lived independently.
>
> . . .

---

[6] In the ALJ's opinion, he mistakenly noted the date of Dr. Lewis's MSS as July 6, 2006. The correct date is September 6, 2006. TR 463-65.

11

> Therefore, in assessing the opinion evidence, I find that Dr. Lewis's very limiting assessment is not well supported by the entire record including evaluations by specialists and examining consultants. The claimant's daily activities are not consistent with Dr. Lewis's extreme limitations. Given the above, I find Dr. Lewis's assessment is entitled to little weight or at most reflects the claimant during a period of decompensation. I do not find it is reflective of her normal functioning. . . .

TR 35-36 (internal citations omitted; footnote added).

Dr. Lewis treated Plaintiff for an extensive period of time, a fact that would justify the ALJ's giving greater weight to his opinion than to other opinions, as long as his opinion was consistent with, and supported by, the evidence of record. As has been noted, however, Dr. Lewis's opinion contradicts other substantial evidence in the record. The ALJ explicitly stated that he accorded Dr. Lewis's opinion little weight because, *inter alia*, Dr. Lewis's "very limiting assessment" was inconsistent with "evaluations by specialists and examining consultants," as well as with Plaintiff's daily activities. *Id.* As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 CFR 416.927(d)(2) and 20 CFR 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* As such, the Regulations do not mandate that the ALJ accord Dr. Lewis's evaluation controlling weight.

With regard to the ALJ's evaluation of, and weight accorded to, Plaintiff's Centerstone treatment records and Dr. Poling's assessment, the ALJ similarly determined that their opinions were inconsistent with the overall evidence of record. Specifically, the ALJ discussed:

> On December 12, 2004, the claimant began treatment at Centerstone. Treating sources at Centerstone assessed that she was having difficulty dealing with the death of her mother who she had

12

taken care of for a number of years. She was assessed as having a major depressive disorder, borderline personality disorder and cocaine abuse. On January 18, 2005, the claimant reported she went out with a friend for a birthday dinner and it was noted that she sees friends. On March 1, 2005, the claimant was noted to be packing and preparing to move from her mother's house. On April 14, 2005, Centerstone assessed that the claimant had marked impairments in activities of daily living, partly due to legal problems, and moderate impairments in interpersonal functioning, concentration, task performance, pace and adaptation to change. On July 15, 2005, Centerstone reported that the claimant was no longer a client.

. . .

On June 12, 2008, Rodney Poling, MD, examined the claimant and noted the claimant did not follow-up her 2007 decompensation at Centerstone. Dr. Poling noted she was non-compliant, non-cooperative, and that one of her problems was over-sedation, with no physical musculoskeletal or other symptoms reported. Dr. Poling documented that he recommended that Dr. Lewis wean or continue to wean the claimant off of Mepergan and Xanax and expressed that he things ". . . sedatives are much the problem." Dr. Poling formed a diagnostic impression including: a psychotic disorder, NOS, non-compliance with medical treatment, and sedative hypnotic intoxication.

. . . It is notable that . . . the claimant only sought mental health counseling for four months at Centerstone.

. . .

. . . Both her treating sources at Centerstone and Dr. Poling assessed very low global assessments of functioning, but I find these are not reflective of the claimant's normal functioning. Dr. Poling appeared to place a great deal of weight on her over-medication. As discussed below, even with her current levels of medication, the claimant is able to continue to function with only moderate mental impairments. The Centerstone assessment appears to be a continuation of her assessment following a decompensation, and is not supported by their treatment notes which noted she was moving, handling her activities of daily living and going out with a friend. Centerstone noted legal problems as part of the reason she was given a marked impairment in activities of daily living on the Tennessee Clinically Related Group (CRG)

13

form.

TR 35-37 (internal citations omitted).

As can be seen, the ALJ specifically noted that the Centerstone GAF score was inconsistent with the Centerstone treatment notes and was more likely to represent Plaintiff during a period of decompensation. Regarding Dr. Poling, who treated Plaintiff three years after her date last insured, the ALJ noted that his assessment also did not reflect Plaintiff's normal functioning. In his decision, the ALJ thoroughly evaluated and discussed the entire record, and found that Dr. Poling's assessment was inconsistent with the overall evidence prior to the onset date, for the reasons to be discussed below.

As has been discussed, the Regulations do not require an ALJ to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record, and when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *See* 20 CFR 416.927(d)(2) and 20 CFR 404.1527(d)(2). Accordingly, the Regulations do not mandate that the ALJ accord the Centerstone records and Dr. Poling's assessment controlling weight.

Moreover, the ALJ's opinion is supported by the State Agency physicians' consultative opinions. Dr. Deborah Doineau examined Plaintiff on July 8, 2006, and Dr. Edward Sachs reviewed Plaintiff's medical records on August 2, 2006. TR 353-61, 370-83. After reviewing their findings, the ALJ observed:

> On July 8, 2006,[7] Deborah Doineau, Ed.D., an examining mental
> health consultant, noted claimant statements that she has a driver's

_____

[7] Dr. Doineau's opinion is dated July 6, 2006, but noted to be received by the "DD" on July 8, 2006. This discrepancy is not, however, material to the issues before the Court.

license and can drive; that she took care of her elderly disabled parents until their deaths; and that she was not taking any psychotropic medications. Dr. Doineau noted the claimant, in fact, continued to take Paxil and Xanax. Dr. Doineau observed that she ambulated with a normal gait. Dr. Doineau noted that her daily activities include watching television, reading, laundry, household chores, eating out daily, driving, and shopping. Dr. Doineau noted claimant statements that she did not cook, but went to fast food restaurants to eat. Dr. Doineau opined that the claimant had a bipolar disorder; cocaine dependence, in remission; a global assessment of functioning of 55; and moderate impairments in interacting with the public and moderate to significant impairments in concentration and persist [*sic*].

On August 2, 2006, Edward Sachs, Ph.D., a non-examining mental health consultant, assessed as to the B criteria that the claimant had: a moderate Restriction of Activities of Daily Living; moderate Difficulties in Maintaining Social Functioning; moderate Difficulties in Maintaining Concentration, Persistence or Pace; and one or two Episodes of Decompensation. Dr. Sachs assessed that the evidence did not establish the presence of the C criteria. Dr. Sachs assessed the claimant could perform simple and detailed tasks with some extended concentration problems, can interact infrequently with the public, and can adapt to infrequent changes.

. . .

Dr. Doineau's observations and assessment of a GAF of 55 are consistent with Dr. Sach's assessment of moderate mental health impairment. Based on the above, I find the assessments by Dr. Doineau and Dr. Sachs are best supported by the evidence of record, which includes daily activities of reading, shopping, going out to eat, living independently, laundry, household chores, and watching television 8 to 10 hours daily. More specifically, the long hours of television, and the claimant's testimony that she reads biographic novels suggest adequate concentration and persistence, and her testimony that she gets along with people suggests more social skills than reflected in some of the above assessments.

Taking everything together, as examining and non-examining consultants, supported by the record, I find the assessments by Dr. Sachs and Dr. Doineau are entitled to significant weight. I adopt Dr. Sachs assessment as to the B and C criteria and Dr. Doineau's

15

assessment that the claimant has a global assessment of functioning of 55. Based on these assessments, the claimant's testimony, and the other opinion evidence in the record, I find the claimant has moderate mental impairments that cause the mental limitations including: performance of simple, repetitive, non-detailed tasks in a low stress environment with minimal supervision and at least occasional contact with the general public.

TR 35-37 (internal citations omitted; footnote added).

As can be seen by the decision excepts quoted above, the ALJ thoroughly evaluated the opinion evidence of record. Based on his evaluation of the evidence of record, he determined that the opinions of Drs. Doineau and Sachs were consistent with one another and with Plaintiff's reported daily activities; therefore, he accorded them significant weight.

The ALJ properly evaluated the medical and testimonial evidence of record, reached a reasoned decision, and articulated the basis for the weight accorded to the opinion evidence. The ALJ's determination, therefore, must stand.

**2.  Plaintiff's Credibility**

Plaintiff also contends that the ALJ did not properly assess the credibility of her statements as required by SSR 96-7p. Docket No. 12-1 at 10-12. Plaintiff asserts that the ALJ gave a "single, conclusory statement" regarding her subjective complaints, and that he failed to explain how much weight he accorded to her statements and the reasons therefore. *Id.* Plaintiff additionally argues that the ALJ focused too much on her reported activities of daily living, and in so doing, ignored supporting medical evidence and failed to consider the record as a whole. *Id.* Plaintiff reiterates her arguments in her Reply. Docket No. 14.

Defendant argues that the ALJ did consider Plaintiff's subjective complaints, but asserts that subjective allegations, standing alone, cannot sustain a finding of disability. Docket No. 13

16

at 18-21. Defendant argues that, contrary to Plaintiff's allegations that the ALJ ignored supporting medical evidence, the ALJ properly examined the entire record. *Id.* Defendant also notes the "universally-recognized deference" typically accorded to an ALJ's credibility determination. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability . . . [T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting S. Rep. No. 466, 98th Cong., 2d Sess. 24) (emphasis added); *see also* 20 CFR 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled . . . ."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain . . . do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the

17

precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (construing 20 CFR 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ, "[a]fter considering the evidence of record, ... [found] that the claimant's medically determinable impairments could reasonably be expected to produce the some [*sic*] symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." TR 34. In reaching this determination, the ALJ discussed Plaintiff's testimony and how it did, or did not, support the medical opinions of record. Regarding Plaintiff's testimony, the ALJ summarized as follows:

> The claimant testified that she has a college degree, and that she has not worked since 2004 when her mother died. She testified that she worked until July 2002 as a full-time barber, then reduced her hours for the next two years; however, I note that the earnings record shows that the claimant has not claimed this or any other significant income on her tax statements since 2001. The claimant stated she used illegal narcotics until 2004, and that she stopped using drugs and drinking alcohol in 2004. The claimant testified that she said she liked using cocaine when she was younger, but that she had not used it for 16 years. The claimant testified that she only used it for a month or two after her mother died. Around this time, the claimant had two hospitalizations with resulting treatment for substance abuse. The claimant stated that she stays in her apartment and only leaves it once a week to go to a doctor's office; however, she also stated that she grocery shops with her brother or shops when he watches her dog. The record also reflects

18

> that the claimant visits friends and has meals out. The claimant
> sees Dr. Lewis, her primary care physician, approximately once
> per month. The claimant testified that she gets along with people,
> watches movies, television and reads biographies. She stated she
> no longer goes to Centerstone for mental health treatment.

TR 33. *See also* TR 44-63.

Additionally, as has been discussed in the statement of error above, the ALJ specifically

noted when the medical evidence was contradicted by, or supported by, Plaintiff's reported daily

activities. TR 35-37. For instance, in discussing Dr. Lewis's opinion, the ALJ noted:

> . . . Dr. Lewis also opined that the claimant has no ability to
> interact with others or engage in social functioning, although the
> claimant stated she went out daily to eat and testified she had no
> problems with people.[8]

TR 35 (footnote added). When discussing the opinions of Drs. Doineau and Sachs, the ALJ

stated:

> . . . Based on the above, I find the assessments by Dr. Doineau and
> Dr. Sachs are best supported by the evidence of record, which
> includes daily activities of reading, shopping, going out to eat,
> living independently, laundry, household chores, and watching
> television 8 to 10 hours daily.[9] More specifically, the long hours of

---

[8] At her hearing, Plaintiff testified as follows:

> Q   Do you have problems getting along with people?
> A   I don't think so.
> Q   Don't think you do?
> A   Well, obviously not. When you cut hair for 27 years.
>     . . .

TR 57.

[9] Plaintiff testified as follows:

> Q   You watch T.V.?
> A   I watch T.V.
>                 . . .

19

> television, and the claimant's testimony that she reads biographic
> novels suggest adequate concentration and persistence, and her
> testimony that she gets along with people suggests more social
> skills than reflected in some of the above assessments.

TR 37 (footnote added).  *See also* TR 357-58 (Dr. Doineau's account of Plaintiff's reported daily activities).

Contrary to Plaintiff's argument that the ALJ ignored medical evidence, his decision demonstrates that he reviewed the record in its entirety.  It is clear from the ALJ's detailed articulated rationale that he chose to rely on medical findings that were inconsistent with Plaintiff's alleged severity of her symptoms, yet supported by her reported activities of daily living.  This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective limitations and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).  An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (citing *Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)).  Discounting credibility is appropriate when the ALJ finds contradictions among the

---

Q       . . . So, how many hours do you spend a day watching the T.V.?
A       I don't know, eight to ten maybe.
        . . .
        I love movies. I – I watch movies over and over and over, the same movie.
Q       Okay. Do you read?
A       I do read.
Q       Okay. What do you read?
A       Autobiographies.

TR 55-56.

medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (citing *Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987) (stating that an ALJ can reject a claimant's testimony of disabling pain where that testimony was inconsistent with the claimant's daily activities)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that Plaintiff's alleged limitations were contradicted by both medical evidence and her own testimony. TR 33-37. As has been noted, this determination is within the ALJ's province. The ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

### 3.  Alcoholism or Drug Abuse

Plaintiff argues that the ALJ erred by concluding that drugs and alcohol were material to a finding of disability. Docket No. 12-1 at 12. Specifically, Plaintiff asserts that the ALJ's finding that she suffered from "polysubstance abuse" as a severe impairment (TR 36), shows that he considered her drug and alcohol use to be material. Docket 12-1 at 12. As support for her assertion, Plaintiff notes that both Dr. Lewis (TR 462) and Dr. Cairo[10] (TR 670) stated that Plaintiff's assessed limitations would be the same regardless of her drug or alcohol use. Docket

---

[10] Dr. Cairo's assessment took place on November 25, 2009, which is more than two years after the Appeals Council's April 20, 2007 disability onset date, and over four years after Plaintiff's date last insured. Accordingly, it will not be discussed in this analysis.

12-1 at 12. Plaintiff reiterates these arguments in her Reply. Docket No. 14.

Defendant responds that because the ALJ found that Plaintiff was not disabled regardless of her prior drug/alcohol use, he was not required to determine whether her drug or alcohol abuse was material to the finding of disability. Docket No. 13 at 22. Defendant reiterates that the ALJ's determination was supported by the overall evidence of record. *Id.*

With regard to the evaluation of whether drug abuse or alcoholism is a contributing factor material to the determination of disability, the Code of Federal Regulations states:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling . . . .

20 CFR 416.935(b).

The ALJ, in the case at bar, determined that Plaintiff had moderate mental impairments causing only moderate limitations even with her potential drug overuse. TR 37. Regarding Plaintiff's drug/alcohol use, the ALJ stated:

> . . . The claimant stated she used illegal narcotics until 2004, and that she stopped using drugs and drinking alcohol in 2004. The claimant testified that she liked using cocaine when she was younger, but that she had not used it for 16 years. The claimant testified that she only used it for a month or two after her mother died. Around this time, the claimant had two hospitalizations with resulting treatment for substance abuse. . . .
>
> . . .

22

. . . [O]n August 4, 2004, the claimant was admitted to the Psychiatric Hospital at Vanderbilt University for treatment of cocaine abuse, opiate dependence, and a depressive disorder. Testing showed the claimant was positive for marijuana, cocaine, opiates, and benzodiazepines. The claimant was treated at the Middle Tennessee Mental Health Institute from December 12, 2004 until December 14, 2004 for polysubstance dependence, adjustment disorder and personality disorder. Testing showed that the claimant was positive for cocaine, opiates, and benzodiazepines. Patricia Corry, MD, assessed that the claimant had a global assessment of functioning score of 61 on discharge. Dr. Corry noted she was evasive, not overly psychotic, was charged with a DUI and that she responded well to medications. Dr. Corry also noted that the claimant had no side effects from her medications.

. . .

In assessing the claimant's mental problems, given the above, which includes decompensations, I find the claimant has the severe impairments of: bipolar disorder/major depression; borderline personality disorder; and polysubstance dependence. In assessing the severity, the claimant has continued to be able to live alone and, *although she is apparently over-medicated, she performs such daily activities as shopping, eating out, caring for a house, laundry, daily chores, and visiting friends*. It is notable that other than the three decompensations, two of which were related to cocaine abuse in 2004, the claimant only sought mental health counseling for four months at Centerstone.

. . . Dr. Poling appeared to place a great deal of weight on her over-medication. As discussed below, *even with her current levels of medication, the claimant is able to continue to function with only moderate mental impairments* . . . .

TR 33-36 (emphasis added) (internal citations omitted).

As can be seen here and in the quoted passages in the previous statements of error, the ALJ thoroughly discussed the evidence of record, including Plaintiff's history of drug use, and properly determined that Plaintiff was "not disabled" within the meaning of the Act. This

23

determination was based not on Plaintiff's history of drug abuse or dependence, but on the medical evidence of record, Plaintiff's testimony, and her reported daily activities for the reasons discussed above. Because substantial evidence supports the ALJ's decision, that decision must stand.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgement on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge